IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and<br><br>CATHERINE MCCABE, in her official capacity as the Acting Administrator of the United States Environmental Protection Agency,<br><br>    Defendants. | 17-cv-751<br>ECF Case |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

INTRODUCTION

1. This lawsuit challenges the United States Environmental Protection Agency's (EPA's) unlawful rescission of a final rule promulgated under the Clean Water Act. The final rule would reduce the discharge of mercury and other toxic metals from dental offices into municipal sewage treatment plants and ultimately into the environment.

2. Mercury is a potent neurotoxin, and mercury releases into the environment can cause serious harm to human health, largely through consumption of contaminated seafood.

3. Mercury is used in dentistry as the main component of dental amalgams for fillings. The final mercury rule at issue here, formally titled "Effluent

Limitations Guidelines and Standards for the Dental Category," would prevent dental offices from discharging into the environment 5.1 tons of mercury and 5.3 tons of other toxic metals each year.

4. The EPA Administrator signed the final mercury rule on December 15, 2016, and the agency delivered the final rule to the Office of the Federal Register for publication in the Federal Register. The Office of the Federal Register posted the final rule for public inspection on or before Thursday, January 19, 2017, and scheduled it for publication in the Federal Register.

5. EPA subsequently withdrew the rule from publication—and the Office of the Federal Register acquiesced in that withdrawal request—in response to a memorandum issued by the White House to all federal executive agencies late in the day on Friday, January 20, 2017, shortly after President Trump was inaugurated.

6. However, the final mercury rule was adopted and duly promulgated by EPA when it was signed by the EPA Administrator, sent to the Office of the Federal Register, and at the latest, when it was filed for public inspection. EPA's rescission of the final rule without any public process violates the notice and comment requirements of the Administrative Procedure Act.

7. NRDC seeks an order vacating EPA's withdrawal of the final mercury rule.

PARTIES

8.     Plaintiff Natural Resources Defense Council is a national, non-profit environmental and public health organization with more than 325,000 members. NRDC engages in research, advocacy, media, and litigation related to protecting public health and the environment. NRDC's mission includes preventing health threats posed by the release of mercury and other toxic chemicals to the environment.

9.     Plaintiff brings this action on its own behalf and on behalf of its members and their children. Plaintiff's membership includes individuals and families who are concerned about the health risks from exposure to mercury. Defendants' rescission of the final mercury rule creates a risk of harm to plaintiff's members and their children by perpetuating an ongoing source of mercury discharges to the environment, at an estimated rate of more than five tons of mercury per year. That harm would be redressed by an order invalidating EPA's withdrawal of the final rule. Additionally, defendants' failure to comply with notice-and-comment requirements before rescinding the rule harmed plaintiff and its members by depriving them of their right to comment on the rescission. Had plaintiff had an opportunity to comment, it would have opposed EPA's repeal of the rule.

10.    Defendant EPA is the federal agency responsible for implementing the Clean Water Act.

11. Defendant Catherine McCabe, Acting Administrator of the EPA, is the agency's highest-ranking official. She is charged with the supervision and management of all decisions and actions of that agency. Plaintiff sues Acting Administrator McCabe in her official capacity.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13. EPA's withdrawal of the mercury rule is a final agency action subject to judicial review. 5 U.S.C. §§ 702, 704, 706.

14. This Court has the authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 702 and 706.

15. The requested relief would redress the harm to plaintiff and its members caused by EPA's unlawful withdrawal of the mercury rule.

16. Venue is proper in this district because plaintiff NRDC resides and has its principal place of business in this judicial district. 28 U.S.C. § 1391(c)(2), (e)(1).

## STATUTORY AND REGULATORY FRAMEWORK

<u>The Clean Water Act</u>

17. Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Clean Water Act sets as an ultimate goal the elimination of "the discharge of pollutants into the navigable waters." *Id*. § 1251(a)(1).

18. Among other things, the Clean Water Act requires EPA to regulate the discharge of pollutants into the nation's waters through municipal sewage plants, which are known as publicly owned treatment works, or POTWs. *Id.* § 1317(b). EPA sets technology-based "effluent limitations guidelines and standards" for categories of dischargers (in this case, dental offices), to minimize the amount of pollutants (in this case, mercury and other metals) those dischargers send through the sewers to POTWs and eventually to surface waters. Within ninety days after proposing standards under this subsection, the EPA Administrator "shall promulgate" those standards. *Id.* § 1317(b)(1).

The Administrative Procedure Act

19. Under the Administrative Procedure Act (APA), an agency must publish a notice of proposed rulemaking in the Federal Register and solicit public comment before adopting or repealing a rule, unless the agency "for good cause" finds that notice and comment are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553. The APA defines "rule making" as the "agency process for formulating, amending, or repealing a rule." *Id.* § 551(5). The APA defines "rule" to include "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

20. Under the APA, a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not

5

in accordance with law," *id*. § 706(2)(A), or that is "without observance of procedure required by law," *id*. § 706(2)(D).

### The Freedom of Information Act

21.     The Freedom of Information Act (FOIA) mandates that "[e]ach agency shall separately state and currently publish in the Federal Register . . . substantive rules of general applicability adopted as authorized by law." 5 U.S.C. § 552(a)(1)(D).

22.     FOIA also provides that "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." *Id*. § 552(a).

### The Federal Register Act

23.     The Federal Register Act (FRA) directs that "[t]here shall be published in the Federal Register . . . documents or classes of documents that may be required so to be published by Act of Congress." 44 U.S.C. § 1505(a)(3). Under FOIA, this includes agency rules. *See* 5 U.S.C. § 552(a)(1)(D).

24.     The Office of the Federal Register is responsible for the prompt and uniform printing and distribution of documents required to be published in the Federal Register. 44 U.S.C. § 1502. The FRA requires that documents to be published in the Federal Register be filed with the Office of the Federal Register for processing prior to publication. *Id*. § 1503. Upon receipt, the Office of the Federal Register must make each document "immediately available for public inspection,"

and must transmit each document "immediately to the Government Publishing Office for printing" in the Federal Register. *Id.*

25. Under the FRA, "[a] document required . . . to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until . . . the document ha[s] been filed with the Office of the Federal Register and a copy made available for public inspection." *Id.* § 1507. Unless otherwise provided by statute, "filing of a document . . . is sufficient to give notice of the contents of the document to a person subject to or affected by it." *Id.*

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

26. Dentists use mercury in amalgams for dental fillings. Dental amalgam is almost fifty percent mercury by weight. The rest of the amalgam is usually composed of a combination of silver, tin, copper, zinc, and small amounts of indium and palladium. The mercury and other metals found in dental amalgam are concentrated and easy to remove.

27. Discharges of dental amalgam into public sewer systems occur when dentists are filling a cavity and excess amalgam is rinsed or suctioned out of the patient's mouth. Dental amalgam discharges also occur when dentists remove old fillings that are worn or damaged, and the amalgam is rinsed or suctioned out of the patient's mouth.

28. Dental offices are the main source of mercury discharges to municipal sewage treatment plants. Most of this mercury is subsequently released to the environment through surface water discharge or incineration, landfilling, or land

application of sewage sludge, which is the solid material that remains after wastewater is treated. Once released into the environment, mercury quickly becomes diffuse, and mercury pollution in the environment is difficult and costly to remove and remediate.

29. Mercury in the environment can be converted by bacteria into methylmercury, a highly toxic form of mercury that bioaccumulates in fish and shellfish. People are exposed to methylmercury principally by eating contaminated fish and shellfish.

30. In people, methylmercury harms the central nervous system. When it is ingested by a pregnant woman, methylmercury is absorbed into the bloodstream and distributed to the developing fetus. Methylmercury exposure during pregnancy can cause toxicity to the fetus's developing brain. At very low levels of exposure—measured in parts per billion—this toxicity can cause permanent impairment, including decreases in motor function, attention span, verbal abilities, memory, and other cognitive facilities.

31. Although pregnant women and children are the populations at greatest risk, methylmercury is also toxic to adults, and can cause adverse cardiovascular effects in particular, including increased mortality from heart disease.

32. The final mercury rule at issue here establishes technology-based pretreatment standards for waste dental mercury. According to EPA, the rule sets a "uniform national standard that will greatly reduce the discharge of mercury-containing dental amalgam to municipal sewage treatment plants." Specifically,

"EPA expects compliance with this final rule will annually reduce the discharge of mercury by 5.1 tons as well as 5.3 tons of other metals found in waste dental amalgam," including silver, tin, copper, and zinc.

33. The rule requires dental offices to use a "practical, affordable, and readily available technology for capturing mercury," known as an amalgam separator, to capture waste mercury that can then be recycled. The rule also adopts certain "best management practices" recommended by the American Dental Association to reduce mercury discharges further. It is a "common sense step" to remove mercury from waste dental amalgam before it is dumped into the drain and released into the environment through sewage treatment plants, which cannot efficiently extract waste mercury.

34. In 2014, EPA issued an information collection request related to the proposed mercury rule, and plaintiff NRDC submitted public comments in response. EPA published the proposed mercury rule on October 22, 2014, and again solicited public comment. NRDC filed additional comments in response to the proposed rule. EPA also held a public hearing on November 10, 2014.

35. Under the Clean Water Act, EPA was required to finalize the mercury rule by January 20, 2015, which is ninety days from the date of proposal. 33 U.S.C. § 1317(b)(1).

36. After reviewing public comments, the EPA Administrator signed the final mercury rule on December 15, 2016.

37. The final rule was widely publicized, including within the regulated community. On the date the rule was signed by the EPA Administrator, the American Dental Association published a statement referring to the final rule as a "fair and reasonable approach to the management of dental amalgam waste." The National Association of Clean Water Agencies, the trade association representing publicly owned treatment works, also published a statement, referring to the final rule as "a huge success" that "will have a minimal burden on POTWs."

38. EPA sent the signed final rule to the Office of the Federal Register for formatting and publication.

39. On information and belief, and based on the Office of the Federal Register website, the Office of the Federal Register filed the final mercury rule for public inspection on Thursday, January 19, 2017, and scheduled the rule for publication on Tuesday, January 24.

40. President Trump was inaugurated at noon on Friday, January 20. Later that day, White House Chief of Staff Reince Priebus issued a "Memorandum for the Heads of Executive Departments and Agencies." The Priebus Memorandum was made available on the White House website on January 20 and was published in the Federal Register on Tuesday, January 24. *See* 82 Fed. Reg. 8346 (Jan. 24, 2017).

41. Among other things, the Priebus Memorandum purports to direct federal agencies to "immediately withdraw" final rules sent to the Office of the Federal Register but not yet published in the Federal Register. The Priebus

Memorandum further states that agencies should exclude from withdrawal "any regulations subject to statutory or judicial deadlines."

42.  In response to the Priebus Memorandum, EPA sent the Office of the Federal Register a letter on January 23, asking to "withdraw all EPA documents currently at the Office of the Federal Register and scheduled for publication on January 24, 2017, or later." EPA's withdrawal letter lists all documents EPA believes to be subject to the Priebus Memorandum. In the letter, EPA characterizes the mercury rule as a "Final Rule" and notes that it is "already on public inspection."

43.  EPA asked to withdraw the final mercury rule from publication even though the Priebus Memorandum by its terms did not apply to that rule, because the rule was subject to a statutory deadline contained in the Clean Water Act, 33 U.S.C. § 1317(b)(1), and was required by law to be finalized within ninety days of its proposal.

44.  The Office of the Federal Register acceded to the EPA withdrawal request and withdrew the final mercury rule from publication.

## CLAIM FOR RELIEF

45.  Plaintiff incorporates by reference all preceding paragraphs.

46.  EPA adopted the final mercury rule as authorized by law and was required to publish it in the Federal Register. *See* 5 U.S.C. § 552(a)(1)(D). At the latest, the final mercury rule was adopted and duly promulgated by EPA when it

was filed with the Office of the Federal Register and made available for public inspection. 44 U.S.C. § 1507.

47. EPA unlawfully withdrew the final mercury rule without publishing a notice of proposed rulemaking or providing an opportunity for public comment on the withdrawal, in violation of 5 U.S.C. § 553.

48. EPA's withdrawal of the final mercury rule was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and was "without observance of procedure required by law," *id.* § 706(2)(D).

49. EPA did not have good cause to disregard the notice and comment requirements of the APA when it withdrew the final mercury rule.

50. Neither the Priebus Memorandum nor any other authority provides a lawful basis for EPA's repeal of the final rule without notice and comment.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that EPA's withdrawal of the final mercury rule without advance notice or an opportunity for public comment violates the APA;

B. Vacating EPA's withdrawal of the final mercury rule;

C. Awarding plaintiff its costs and reasonable attorneys' fees; and

D. Granting such other relief that the Court considers just and proper.

Respectfully submitted,

*/s/ Margaret T. Hsieh*
Margaret T. Hsieh
Vivian H.W. Wang

                                Natural Resources Defense Council
                                40 West 20th Street, 11th Floor
                                New York, NY 10011
                                T: (212) 727-4652
                                F: (415) 795-4799
                                mhsieh@nrdc.org
                                vwang@nrdc.org

                                Counsel for Plaintiff

Dated: February 1, 2017